OPINION OF THE COURT
Michael J. Obús, J.
The issue here is whether an indicted defendant may waive his right to a trial by jury to the extent of consenting to deliberations by fewer than 12 persons. Under the circumstances at bar, where during the course of a murder trial a deliberating juror became ill and had to be hospitalized for an extended period of time, the court determined that such a *143 waiver was permissible. This opinion is to elaborate on that decision.
I.
Shortly after a shooting incident on the east side of Manhattan on January 19, 1994 left one person dead and two others seriously wounded, a grand jury indicted the defendant, Winston Gajadahar, for two counts of murder in the second degree under theories of intentional and felony murder (Penal Law § 125.25 [1], [3]), two counts of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), two counts of assault in the first degree (Penal Law § 120.10 [1]), and one count of attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [2]). He was not apprehended until January of 1999, however, when he was caught attempting to enter his native country of Trinidad and Tobago using an altered passport. After being extradited to the United States in December of that year, the defendant had to wait a substantial period of time for his case to come to trial, in part because one of the shooting victims, a Canadian citizen of Egyptian descent, was traveling in the Middle East and another witness had to travel here from Trinidad. The defendant’s motion to dismiss on speedy trial grounds was denied on April 26, 2000, and, after other pretrial proceedings were completed, jury selection commenced on September 9, 2002.
On October 8, 2002, almost a month after the trial began, the case was submitted to the chosen jury and, upon the defendant’s indication that he would not consent to having an alternate juror join the ongoing deliberations, the alternates were excused. The jury then deliberated for three days during which it requested to view a number of the trial exhibits, to hear extensive readback of testimony and to be reinstructed on several aspects of the law. On the third afternoon of the deliberations, Thursday, October 10, 2002, one of the jurors became ill, deliberations were interrupted, and the matter was adjourned to the following day.
Upon being advised on Friday morning that the juror was in the hospital and that her prognosis was unclear, the defendant demanded that the deliberations continue to verdict with the remaining jurors. Defense counsel, noting the length of the trial and number of witnesses involved, and expressing concern that a further delay might itself result in a mistrial, stated that his client was “insisting” that the trial proceed and that he had a “right to have this jury make a decision.” Referring to *144 the Court of Appeals opinions in People v Page (88 NY2d 1 [1996]) and People v Ryan (19 NY2d 100 [1966]), counsel advised that the defendant was accordingly prepared to execute a written and oral waiver of his right to have 12 persons decide the case. The prosecutor, who stated that he would otherwise “happily” join in the defendant’s application, expressed concern that other decisions of the Court of Appeals, Cancemi v People (18 NY 128 [1858]), and People v Patterson (39 NY2d 288 [1976]), would not permit such a waiver. He also pointed out that the absent juror might somehow recover by the end of the upcoming Columbus Day holiday weekend, thus avoiding the need to proceed with fewer than 12 jurors. Under these circumstances, with both parties expressing great concern that the resources “invested” in the trial not be lost, the court took what it considered to be the most prudent course, declining to accept the proposed waiver at that time, and directing the jurors to return after the weekend.
As of Tuesday morning, October 15, 2002, the court and the parties were advised that the juror remained in the hospital and would not be available within any reasonable period of time. The defense, persisting in its opposition to the declaration of a mistrial and insisting that the remaining jurors continue to deliberate to a verdict, asserted that its position had only “gotten stronger” with the additional developments. The People, stating that the issue was not “clear cut” and that “uncertainty in the law” caused them to hesitate, again expressed reservations as to whether the defendant could lawfully execute such a waiver.
At that stage of the proceedings, having had additional time to consider the matter, the court advised the parties that it would be willing to entertain the defendant’s application to proceed with the remaining members of the jury. On the record and at length, the court reviewed with the defendant his constitutional right to have a jury of 12 decide his case, including his absolute right to have a mistrial declared as a result of the unavailability of one of the deliberating jurors and to have an entirely new jury of 12 selected at a second trial. The court reminded the defendant that unanimity was required for a verdict and that, if his waiver were to be accepted, the unanimous decision of the remaining 11 jurors would be a binding verdict, whether of conviction or acquittal, as to each of the pending counts. It then reviewed the language of the proposed written waiver, confirming the defendant’s understanding of its terms and his desire to proceed in this manner. The defen *145 dant had ample opportunity to confer with counsel throughout this process, raised specific questions about the terms of the waiver which were clarified and assured the court that he was proceeding voluntarily. He and his counsel then signed the following waiver in open court:
“The defendant herein, having been indicted for two counts of murder in the second degree, two counts of attempted murder in the second degree, two counts of assault in the first degree and one count of attempted robbery in the first degree, and having been informed of his right to be tried under said indictment by a jury of twelve persons, hereby in Open Court waives his right to trial by jury, pursuant to Article I, Section 2, of the Constitution of the State of New York, and Article 270 of the Criminal Procedure Law, to the extent that, in view of the unavailability of juror number 9, he requests that he be tried by a jury consisting of the remaining eleven sworn jurors and that deliberations continue to verdict with those jurors. * * *
“The defendant opposes the declaration of a mistrial.
“Furthermore, to the extent that such review may be waived, should there be a judgment of conviction, the defendant waives any appellate review of the lawfulness of this waiver.”
The court, having summarized on the record the basis for its conclusion that such a waiver could lawfully be accepted, approved the defendant’s waiver, finding that he fully understood his right to a jury trial, including the right to a jury of 12 persons, and that he was making a knowing, intelligent and voluntary decision to waive that right to the extent of agreeing to have the remaining 11 members of the jury deliberate to verdict. It concluded that “if there ever was a case” in which the defendant could proceed in this fashion, “this is that case.” Ultimately, the defendant was acquitted of all of the counts alleging an intent to cause death or serious physical injury, but was convicted of the felony murder and attempted robbery charges.
II.
Article I, § 2 of the New York State Constitution guarantees that the right to a “[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall *146 remain inviolate forever.” As set forth in Cancemi v People (18 NY 128 [1858] [partial publication], published in full at 7 Abb Prac 271), this means that a criminal defendant in New York is constitutionally entitled to be tried by a jury consisting of 12 people, as a legal jury was constituted at common law. In Can-cemi (18 NY at 130), where a sitting juror was “withdrawn by the express request and consent of the prisoner,” and a verdict of conviction was rendered by 11 jurors only, the Court of Appeals was presented for the first time with the question whether a criminal defendant may lawfully waive his right to a jury of 12 persons. There, the prosecution noted that “[n]o definite number was fixed upon, of twelve, until the time of Henry II” and that, although “ecclesiastical authority had made precedent for it” as it was the number of apostles, the courts could have granted a lesser number had the parties so requested (7 Abb Prac at 288). It was argued that, as the right to a jury of 12 was secured to a criminal defendant “by the common law incorporated into Magna Carta, and sanctioned by the constitution of our State” for his “especial protection,” such a defendant should be permitted to waive that right under appropriate circumstances. (7 Abb Prac at 289.)
The Cancemi Court disagreed. While it recognized that a criminal defendant may lawfully waive or forfeit certain constitutional rights, it noted that the “present constitution” provided for the waiver of a jury trial only in civil cases. Explaining that “[t]he substantial constitution of the legal tribunal and the fundamental mode of its proceeding are not within the power of the parties,” it concluded that neither the public prosecutor nor the defendant had authority to consent to such an essential change. (18 NY at 136.) To hold otherwise, it reasoned, would necessarily countenance the waiver of a criminal jury in its entirety, a prospect it considered to be intolerable under the existing constitution. *147 and we think it ought not to be tolerated.” (Id. at 138.)
*146 “If a deficiency of one juror might be waived, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone. It would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors,
*147 Though in Williams v Florida (399 US 78, 102 [1970]), the Supreme Court had held that the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution does not encompass the common-law right to a jury of 12, characterizing that number as “a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance ‘except to mystics,’ ” the Court of Appeals reiterated in People v Page (88 NY2d 1 [1998]), almost 140 years afer Cancemi, that a complement of 12 persons remains an essential component of the right to a jury trial in New York. Indeed, as the Page Court noted, prior to the 1938 amendment to the State Constitution providing for waiver of a jury, there was doubt as to whether even that proposed amendment “would suffice to ‘legalize trial by jury of less than twelve men, as well as a complete waiver’ ” (Page, 88 NY2d at 5).
However, while the right of a criminal defendant to a jury trial has certainly remained inviolate in this state since Can-cemi was decided, the law has nevertheless evolved. In 1938, article I, § 2 of the State Constitution was amended to provide for the waiver of a jury trial in a criminal case that was not thought possible at the time of Cancemi. Safeguards to insure the voluntariness of such a waiver, including the requirement that “a written instrument [be] signed by the defendant in person in open court before and with the approval of a judge,” were added shortly thereafter. (See Page, 88 NY2d at 6.) And in 1962, the Constitution was amended again to add article VI, § 18, which provides, inter alia, that “a jury shall be composed of six or of twelve persons * * * provided, however, that crimes prosecuted by indictment shall be tried by a jury composed of twelve persons, unless a jury trial has been waived as provided in section two of article one of this constitution.” Accordingly, in 1970, the Criminal Procedure Law was enacted to conform to these provisions. (See CPL 260.10, 320.10, 340.40, 360.10 [1].)
Moreover, whatever reservations there may have been as to the efficacy of jury waivers in criminal prosecutions even after these constitutional amendments, they have been lain to rest by the Court of Appeals. In People v Ryan (19 NY2d 100 [1966]), where the defendant’s attorney consented to the substitution of an alternate juror after deliberations had begun, pursuant to section 358-a of the Code of Criminal Procedure, *148 the Court (at 105) held that such a substitution of what was “in effect a 13th juror” was violative of the defendant’s right to a jury of 12 guaranteed by the State Constitution as interpreted in Cancemi. The Court recognized, however, that Cancemi was decided prior to enactment of the constitutional amendment providing for a jury waiver, and it implicitly acknowledged that such a waiver was now possible in ruling that consent by counsel alone did not satisfy constitutional requirements. (Ryan, 19 NY2d at 106.) And much more recently, in Page, which cites Cancemi and People v Ahmed (66 NY2d 307 [1985]), for the proposition that a criminal defendant is constitutionally entitled, as he was at common law, to trial by a jury of 12, the Court clarified that such “a defendant could waive the right to a jury trial — as well as the inclusory right to a jury of 12” provided the waiver was properly executed. {Page, 88 NY2d at 8.) In Page, however, where an alternate juror was substituted without the defendant’s written consent as required by the Constitution and Criminal Procedure Law § 270.35, which “mirrors” the constitutional waiver requirements, the Court was compelled to reverse the judgment of conviction.
Similarly, in People v Ahmed (66 NY2d at 310-311), the Court addressed a claim that the absence of the judge and delegation of responsibility to his law secretary who reinstructed the jury on the law during its deliberations deprived the defendant of his right to a jury trial, which includes the supervision of a judge as an “integral component” of that right. Citing Cancemi, the Court ruled that such a claim is so fundamental that it is reviewable on appeal even though not preserved by timely objection. It went on to address a potential additional “obstacle” to its consideration of the merits of the issue, that counsel’s consent affirmatively waived objection to the procedure employed. The Court ultimately concluded, as it would later in Page, that in the absence of a written waiver executed in open court with the court’s approval, the applicable requirements of article I, § 2, for waiver of a jury trial had not been met.
Thus, Cancemi retains vitality as authority that an indicted defendant in New York is entitled to a trial by a jury of 12 persons, and that general preservation requirements do not apply to certain claims of fundamental error, including asserted violations of this right. However, in light of subsequent constitutional amendments and the interpretation of those provisions by the Court of Appeals in cases such as Ryan, Ahmed, and Page, Cancemi can no longer stand for the proposition that a defendant may not waive his “inclusory right” to a jury of 12 persons, an option specifically acknowledged in Page.
*149 This court is mindful that in People v Lester (149 AD2d 975 [4th Dept 1989]), the Court stated, on authority of Cancemi, that a defendant may not consent to trial by fewer than 12 jurors and that, because this is so fundamental, waiver and preservation rules do not preclude review. It also recognizes that in Matter of Stressler v Hynes (169 AD2d 750 [2d Dept 1991]), and Matter of Bell v Sherman (174 AD2d 738 [2d Dept 1991]), the Second Department, in the context of CPLR article 78 proceedings in the nature of prohibition, cited Cancemi in ruling that each trial court properly declared a mistrial upon the disqualification of a deliberating juror because the defendant could not consent to trial by a jury of fewer than 12 persons. Indeed, the court in People v Hurst (2001 NY Slip Op 40086[U] [Sup Ct, Bronx County]), though viewing the logic of the Court of Appeals decision in Page as permitting a trial court to accept a defendant’s waiver and allow deliberations to continue with fewer than 12 jurors, concluded that it could not so rule in light of these appellate decisions. (See Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984].) As the Hurst court noted, however, none of these cases involved an actual written waiver executed in accordance with strict constitutional requirements, and all of them preceded the Court of Appeals’ explicit statement in Page that a defendant may in fact waive his right to a jury of 12.
This court also recognizes that Criminal Procedure Law § 280.10 (3), to which section 270.35 (1) refers, contemplates the declaration of a mistrial where, in the absence of available alternate jurors, it is “physically impossible to proceed with the trial in conformity with law.” In the instant case, however, it was not impossible to proceed because the defendant consented, indeed insisted, on proceeding to a verdict with the jury that was already in place. He had legitimate reasons to do so for, as has been acknowledged in other contexts, a defendant, having marshaled his resources, selected a jury and litigated his case at trial, has the right to a prompt determination of the matter by the jury selected. (See People v Jeanty, 94 NY2d 507, 517 [2000]; People v Anderson, 70 NY2d 729, 730 [1987].) And while the Constitution guarantees an indicted defendant the right to a jury of 12, its existing provisions have been interpreted to allow for the waiver of that number of jurors, even if that involves bringing an additional person into the deliberations after they have begun and potentially changing the dynamics of those deliberations in ways not implicated here. Thus, a jury made up of a different number of jurors is *150 not, in itself, alien to the fundamental mode of proceedings of the courts of this state, simply because the number is not 12, as long as the decision to continue with such a jury is made in compliance with the strictures of the Constitution and with the approval of the court.
To be sure, as the Court explained in People v Patterson (39 NY2d at 295), “the rule has come down to us that where the court had no jurisdiction, or where the right to trial by jury was disregarded, or where there was a fundamental, nonwaivable defect in the mode of procedure, then an appellate court must reverse, even though the question was not formally raised below” (emphasis supplied). Certainly, any future claim by the defendant at bar that his fundamental right to a jury trial was violated should be reviewable, despite his consent to proceeding with the jury of 11. But under the circumstances of this case, although article 270 of the Criminal Procedure Law does not make specific provision for proceeding in this manner, this court is of the opinion that the defendant’s fundamental right to a trial by jury was hardly disregarded. It was thoroughly honored.